DORCHESTER GAS
CORPORATION, Petitioner,

v.

AMERICAN PETROFINA,
INC., Respondent.

No. C–4014.

Supreme Court of Texas.

Jan. 8, 1986.

Rehearing Denied June 23, 1986.

Locke, Purnell, Boren, Laney, Neely, Orrin L. Harrison, Julie M. McCoy, and Daniel Tsevat, Dallas, for petitioner.

Nichols, Merriman, Patterson & Allison, Rex A. Nichols, Longview, for respondent.

OPINION

GONZALEZ, Justice.

This case involves construction of an indemnity clause in a sales contract. American Petrofina, Inc. (Fina) sold a refinery to Dorchester Gas Corporation. After the sale, a Dorchester employee sued Fina for damages due to an on the job injury. Fina settled and pursuant to a clause in their sales agreement, Fina sought indemnity from Dorchester. After a trial without a jury, the trial court found that the clause was insufficient to cover the claim. The court of appeals reversed the judgment of the trial court and rendered judgment in favor of Fina. 685 S.W.2d 723. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

The 1977 contract of sale contained the following indemnity clause in Section XI:

B. Purchaser hereby covenants and agrees with Seller that:

. . . .

It shall indemnify, defend and hold harmless [Fina] against all claims, actions, demands, losses or liabilities arising from the use or the operation of the Properties or arising under or relating to any lease, contract, license or other agreement assigned to and assumed by [Dorchester] and accruing

from and after the Effective Date [October 31, 1977].

In the agreement, "Properties" was defined as "real property, refinery, transportation facilities and other assets of Seller ..." including all "movable equipment, tools, catalyst, piping and all other structures and improvements ..." located on the premises.

The contract also contained the following warranty:

A. Seller hereby warrants and represents to Purchaser that as of the Effective Date and the Closing Date:

....

11. The buildings, improvements, equipment, fixtures, equipment and other personal property situated on the Land, ... will at the Closing Date be, in good, sound condition, operation and repair, and Seller further warrants, represents and guarantees that it has no knowledge of any condition or defects (latent or otherwise) not disclosed herein of the Properties, the buildings, the improvements, fixtures, equipment or other personal property which would affect the sale of the Properties or be material to this Agreement.

In July 1978, a Dorchester employee, Don Rhea, was injured at the refinery while working on a steam pump. Rhea collected worker compensation benefits pursuant to Dorchester's status as a subscriber under the Workers' Compensation Act. Tex.Rev.Civ.Stat.Ann. art. 8306 (Vernon Supp. 1985).

In February 1980, Rhea filed suit against Fina in federal court under theories of products liability (sale of a defective and unreasonably dangerous steam pump), negligence (negligent sale of a defective and unreasonably dangerous steam pump), breach of contract (as a third-party beneficiary based upon express and implied warranties), and gross negligence. During jury deliberations, Fina settled with Rhea and the workers' compensation carrier for $300,000.

In November 1982, Fina filed this suit in state court against Dorchester seeking indemnity for the $300,000 it paid to Rhea. The parties submitted the case to the court on a written stipulation of evidence. Thereafter, the trial court rendered a take nothing judgment against Fina and the trial court filed findings of fact and conclusions of law. In part, the trial court concluded that:

### CONCLUSIONS OF LAW

1. The plaintiffs' case as submitted to the jury in federal court is based entirely on the sale of a defective product to Dorchester by Fina. The express warranties contained in Section XII of the Agreement, together with the implied warranties made by Fina, foreclose any indemnification of Fina by Dorchester for any settlement based on the defectiveness of any product sold by Fina to Dorchester.

2. In order for the indemnity provision to provide indemnification for the sale of a defective product the indemnity provision must include within its language a provision to cover the sale of a defective product. Since such clear and unequivocal language is not present in the indemnity provision, Fina is barred from being indemnified by Dorchester.

The court of appeals held that the trial court erred in holding that the indemnification provision in the agreement was insufficient to cover Rhea's claims against Fina.

Article 8306, section 3(d) of the Workers' Compensation Act provides:

If an action for damages on account of injury to or death of an employee of a subscriber is brought by such employee ... against a person other than the subscriber, ... and if such action results in a judgment against such other person, or results in a settlement by such other person, the subscriber ... shall have no liability to reimburse or hold such other person harmless on such judgment or settlement ... in the absence of a written agreement expressly assuming such

liability, executed by the subscriber prior to such injury or death.

 Generally, in Texas, an indemnity provision will not give protection to the indemnitee against the consequences of his own negligence unless the contract expresses such an obligation in clear and unequivocal terms. A broad general statement of indemnity is insufficient to protect an indemnitee against his own negligence. *Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d 208, 211 (Tex.1980). *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818, 822 (Tex. 1973). The requirement for clear and unequivocal language in a contract for indemnity to protect the indemnitee against strict liability for a defective product is the same as for indemnity for one's own negligence. *See U.M.C., Inc. v. Coonrod Electric Co., Inc.* 667 S.W.2d 549, 555 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *McKesson Chemical Co. v. Phelps Dodge Corp.*, 638 S.W.2d 64, 67 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.).

Fina asserts that the obligation to indemnify does not have to meet the "clear and unequivocal" rule when the contract provides for indemnity against injuries or damages caused by defects in certain premises resulting from the maintenance or operation of a specified instrumentality. The court of appeals agreed holding that the "specific instrumentality" was "the use or operation" of the refinery and that Dorchester knew it was assuming full responsibility for the losses concerning the premises or instrumentality (refinery) regardless of whose negligence caused the loss. They support their analysis by noting that Rhea suffered his injuries nine months after Fina's operation of the premises had ceased, when the refinery was solely the responsibility of Dorchester.

This "so called" exception to the "clear and unequivocal" rule has been most aptly explained in *Eastman:*

Furthermore, *the first 'so-called exception' is not a true exception, but in reality is only an application of the general rule,* for when indemnity is clearly expressed with reference to specific premises or instrumentalities, the indemnitor necessarily knows that he is assuming full responsibility for losses in connection with those particular premises or instrumentalities, regardless of whose negligence may cause the losses.

(emphasis added). 603 S.W.2d at 212.

The "specific instrumentality" argument has often been asserted by indemnitees who rely on indemnity provisions with language not "clear and unequivocal." For example, in *Rourke v. Garza*, 511 S.W.2d 331 (Tex.Civ.App.—Houston [1st Dist.] 1974,) *aff'd*, 530 S.W.2d 794 (Tex.1975) an indemnification clause stated that "Lessee assumes responsibility for all claims asserted by any person whatever growing out of the *erection and maintenance, use or possession* of said equipment, and agrees to hold the Company harmless from all such claims ..." (emphasis added). 511 S.W.2d at 340. The jury found that Rourke, the Lessor, had supplied defective scaffolding. The court of appeals rejected Rourke's contention that the injury in question was from the maintenance or operation of the scaffolding, and that the indemnity clause clearly expressed the indemnification of Rourke by Har-Con, the Lessee. The injured's claim was generally not from the use of the scaffolding, but from the *initial furnishing of defective equipment* that formed the basis of Rourke's liability, and there was nothing in the language of the indemnity clause that specifically indicated that Har-Con should indemnify Rourke for Rourke's negligence and for defects in the equipment over which Rourke had sole control. *Id.* at 341. Our case is factually indistinguishable from *Rourke.*

 We hold that the court of appeals erred in application of the "clear and unequivocal" test. The indemnity clause, particularly when read in conjunction with the warranty clause, does not reflect that the parties clearly and unequivocally intended that Dorchester indemnify Fina against all injury or damages, whether or not they were based on Fina's negligence or due to Fina's supplying of a defective or unrea-

**544**

sonably dangerous product. We further hold that the language did not give Dorchester full and fair notice that it would be assuming full responsibility for all damages caused by Fina after the sale of the refinery.

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.