**MAN GHH LOGISTICS GMBH, fka MAN GHH Krantechnik GMBH and fka M.A.N., Wolffkran GMBH, MAN GH Corp., fka American M.A.N., Corp., MAN Gutehoffnungshutte AG, fka MAN Gutehoffnungshutte GMBH, and Wolffkran American, Inc., fka Emscor Wolff Rentals, Inc., and dba E.W.R., a Wolffkran Company, Appellants,**

v.

**EMSCOR, INC., and Walter P. Manning, Jr., Appellees.**

No. C14–92–01254–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 1, 1993.

Rick Lee Oldenettel, Houston, for appellants.

David B. Weinstein, John M. Davidson, Houston, for appellees.

Before ROBERTSON and CANNON, JJ., and ROBERT E. MORSE, J. (Assigned).

## OPINION

MORSE, Justice (Assigned).

Appellants and appellees, by cross-point, both appeal from summary judgments. The parties sought indemnification from each other for funds voluntarily paid in settlement of a wrongful death suit. The parties contend they are entitled to reimbursement from each other through contractual contribution. We disagree and affirm the judgment of the trial court.

On April 25, 1987, three men were killed and one man injured when a 152' tower crane fell over while it was being dismantled. Approximately two years prior to the accident, in May, 1985, Emscor sold its crane fleet, including the crane involved in this accident, to appellants. Emscor continued managing the crane fleet until January 1987, four months before the accident, when Emscor's management contracts were terminated. The families of two of the men killed filed suit against appellants and Emscor. In October 1990, appellants voluntarily settled the two death claims for $3,000,000. In November, 1990, Emscor and Manning (former president of Emscor) agreed to a $3,000,000 judgment in favor of the two families.

Appellants contend appellees are responsible for the accident because Emscor erected the tower crane with twelve center ballast weights, instead of fourteen center ballast weights. The center ballast weights are placed on the base of the tower crane to maintain its stability. Appellees contend the accident was caused by the improper dismantling procedure of appellants.

Appellants sought reimbursement from appellees for the $3,000,000 appellants voluntarily paid to the two families. Appellees moved for summary judgment, which was granted. Appellees in turn, sought indemnity from appellants. Appellants moved for summary judgment, which the trial court also granted. Both parties appeal the granting of the summary judgments.

■ A summary judgment will be upheld on appeal only if the movant has conclusively established there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. *Davis v. Houston Independent School District*, 654 S.W.2d 818, 820 (Tex. App.—Houston [14th Dist.] 1983, no writ). The summary judgment evidence is considered in the light most favorable to the party opposing the motion. *Gonzales v. Global Truck & Equipment, Inc.*, 625 S.W.2d 348, 350 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). All doubts concerning the existence of a genuine issue of material fact should be resolved against the movant. *Id.* All conflicts in the evidence must be disregarded and the evidence that tends to support the position of the non-movant is accepted as true. *Id.*

The question to be determined on appeal is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of plaintiff's cause of action. *Gibbs v. General Motors*, 450 S.W.2d 827, 828 (Tex.1970).

In three points of error, appellants argue the trial court erred in granting appellee's motion for summary judgment because application of the "express negligence rule" was premature and improper; appellants' claim for contractual contribution survives a voluntary settlement and is not barred by the express negligence rule; and satisfaction of the express negligence rule should not be a prerequisite to recovery of contractual contribution and/or contractual

comparative indemnity. We will address appellants' three points of error together.

Appellants acknowledge that their voluntary settlement of $3,000,000 extinguishes any common-law and statutory contribution rights. *See Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19 (Tex.1987); *International Proteins Corp. v. Ralston–Purina Co.*, 744 S.W.2d 932 (Tex.1988); TEX.CIV. PRAC. & REM.CODE ANN. § 33.015(d) (Vernon 1993). However, appellants argue they have a right to "contractual contribution" for appellees' proportionate share of fault based upon the indemnification clause contained in the "Asset Purchase Agreement," signed by appellants and Emscor on January 24, 1987, when Emscor sold the crane fleet to appellants. The pertinent portion of the "Asset Purchase Agreement" states:

*Indemnifications*

*Indemnification by Sellers.* Sellers [Emscor], jointly and severally, hereby indemnify and hold harmless the Purchaser [appellants] and its respective successors and assigns from and against any loss, damage, or expense (including reasonable attorneys' fees) caused by or arising out of:

(i) any breach or default in the performance by Sellers of any covenant or agreement of Sellers contained in this Agreement;

(ii) any breach of warranty or inaccurate or erroneous representation made by Sellers herein, in any Exhibit hereto, or in any certificate or other instrument delivered by or on behalf of Sellers pursuant hereto;

(iii) third party claims regarding Emscor's' management of Purchaser's Wolff tower cranes prior to the closing Date;

(iv) third party claims regarding any matter relating to title to or Emscor's maintenance of the Purchase Assets prior to the Closing Date; or

(v) any liability arising out of any and all actions, suits, proceedings, claims, demands, judgments, costs, and expenses (including reasonable legal and accounting fees) incident to any of the foregoing.

■ The express negligence rule requires parties seeking to indemnify the indemnitee from the consequences of its own negligence to express that intent in specific terms. Under the test, the intent of the parties must be specifically stated within the four corners of the contract before such indemnity provision is enforceable. *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705 (Tex.1987). Application of the express negligence test is proper at the summary judgment stage; fault apportionment is not a prerequisite to judging an indemnity agreement's effectiveness. *Atlantic Richfield v. Petroleum Personnel*, 768 S.W.2d 724 (Tex.1989). Appellants argue the trial court's application of the express negligence rule was improper because appellants were seeking reimbursement not for their own negligence, but for appellees' negligence.

■ We agree with appellants that the express negligence rule does not apply in this case because appellants are not seeking to recover for their own negligence. We also agree with appellants that if they were seeking to recover for their own negligence, they would be barred by the express negligence rule because the indemnification clause does not meet the requirements set forth in *Ethyl Corp.*, 725 S.W.2d 705.

■ However, we also find that the indemnification agreement is not effective in establishing a claim for contractual contribution. The clause is an indemnity provision, not a contractual contribution provision. There is no agreement that appellees will reimburse appellants for any voluntarily settlements made with any plaintiffs. The contract provision does not mention "contribution," and fails to discuss any apportionment of fault. The contract provision also fails to set forth any intent by the parties for a claim for reimbursement. The indemnification agreement does not provide for contractual contribution. Therefore, the indemnification clause is not necessary because appellants are not seeking reimbursement for their own negligence and if they were, are barred by the express negligence rule, and the clause is

ineffective in establishing a contractual contribution for a voluntary settlement. Appellants voluntarily paid $3,000,000 to plaintiffs in the underlying case. By doing so appellants have destroyed any forum for determining who was at fault. Appellants are not entitled to reimbursement for their voluntarily settlement of $3,000,000. We overrule appellants' first, second and third points of error.

In its cross-point, appellees argue the trial court erred in granting appellants' motion for summary judgment because the summary judgment evidence presented a genuine fact issue for the jury to decide if Emscor's negligence was the sole cause of the accident. We agree that there is a fact question as to the cause of the accident.

However, appellants' motion for summary judgment asserted that appellees were the sole cause of the accident *and* that there was no basis for appellees' assertion of a contractual contribution and/or indemnity claim. In their response to appellants' motion for summary judgment, appellees furnished controverting evidence as to the cause of the accident. They did not furnish any evidence to support their assertion of a contractual contribution and/or indemnity claim. The summary judgment order does not state on which of the two grounds it was granted; therefore, if either ground is insufficiently controverted by the evidence, the summary judgment will be upheld. Appellees must show that each of the independent arguments alleged in the motion is insufficient to support the summary judgment. *See Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

In their pleadings, appellees rely upon the same contract appellants relied upon to establish a contractual contribution. The contract provided for reciprocal indemnity obligations. Based upon our discussion of appellants' three points of error, we find that appellees' reciprocal indemnity obligations fail to establish a right for contractual contribution. We overrule appellees' cross-point.

Accordingly, we affirm the judgment of the trial court.